# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alex Joseph Pedrin,<br>      Petitioner,<br>vs.<br>Charles L. Ryan, et al.,<br>      Respondents. | No. CV-11-150-TUC-DCB-DTF<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Alex Joseph Pedrin has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before this Court are the Second Amended Petition (Doc. 24), Respondents' Answer (Doc. 28) and Petitioner's Reply (Doc. 29). The Magistrate Judge recommends that the District Court, after its independent review of the record, dismiss the petition.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner was convicted on November 24, 2003, in Pima County Superior Court, after a jury trial of five counts of aggravated assault, two counts of first-degree burglary, and one count each of conspiracy, kidnapping, armed robbery, aggravated robbery, fleeing from a law enforcement vehicle, possession of a deadly weapon by a prohibited possessor, theft, and attempted first-degree murder. The convictions were based on Pedrin and two other men breaking into a home and tying up a wheelchair-bound man and his caretaker to demand drugs and money. (Doc. 21, Ex. A at 2.) They assaulted the two victims, then left in one of the victim's cars with approximately sixty guns and some jewelry. (*Id.* at 2-3.) The police

1 engaged in a high-speed chase of the vehicle, and shots were fired from both sides of the car
2 at the patrol cars. (*Id.* at 3.) When the stolen car struck a fence, Pedrin fled but soon was
3 apprehended. (*Id.*) Pedrin was sentenced to concurrent and consecutive sentences totaling
4 110.5 years.

The Arizona Court of Appeals reversed his conviction and sentence for theft and affirmed the remainder of the counts. (Doc. 21, Ex. A at 15, 22.) Petitioner sought review in the Arizona Supreme Court, which was denied. (*Id.*, Exs. E, F.)

Petitioner filed a Notice of Post-conviction Relief (PCR) and was appointed counsel. (Doc. 21, Exs. G, H.) Counsel filed a notice that he could not find any meritorious issues and requested that Petitioner be given time to file a pro se brief. (*Id.*, Ex. H.) Petitioner filed a brief, which the PCR court denied. (*Id.*, Ex. L.) The Court of Appeals granted review but denied relief. (*Id.*, Ex. N.) The Supreme Court denied review. (*Id.*, Ex. P.)

## **DISCUSSION**

In Claim 1, Petitioner alleges that (a) his counsel was ineffective for failing to move the trial court to disqualify two jurors based on their exposure to media related to Petitioner and (b) the trial judge violated his Fourteenth Amendment right to a fair trial by not dismissing the two jurors. Claim 2 alleges that (a) Petitioner's Fifth Amendment right was violated by conviction on a charge not included in the indictment; and (b) counsel was ineffective for failing to object to a jury charge on the count not included in the indictment. Petitioner alleges in Claim 3 that (a) the trial judge should have dismissed the two jurors exposed to media and failure to do so violated his Fourteenth Amendment right; (b) the trial judge violated Petitioner's right to due process by allowing amendment of the indictment; and (c) the prosecutor committed misconduct by misstating the law, instructing the jury to find Petitioner guilty on alternative charges, and amending a charge. Claims 1(b) and 3(a) appear to be the same and the Court will treat them together. Similarly, Claims 2(a) and 3(b)

are premised on the same factual basis and the Court will treat them as one claim.[1]

Respondents concede that the petition is timely (Doc. 28 at 2) but argue that Petitioner's claims are procedurally defaulted with the exception of Claim 1(b)/3(a).[2]

**PROCEDURAL DEFAULT**

The Court evaluates whether Petitioner properly exhausted Claims 1(a), 2(a)/3(b), 2(b) and 3(c).

**Principles of Exhaustion and Procedural Default**

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Exhaustion requires that a petitioner clearly alert the state court that he is alleging a specific federal constitutional violation. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *see also Gray v. Netherland*, 518 U.S. 152, 163 (1996) (general appeal to due process not sufficient to present substance of federal claim).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR

---

[1] Petitioner and Respondents treat Claim 1(a) as a two-part claim; however, they appear to be all one argument: counsel failed to move for the disqualification of two jurors (Strassman and Bracamonte), including not objecting when only one (Price) of three jurors (Price, Strassman and Bracamonte) that were exposed to extraneous evidence were dismissed. Respondents identify Claim 2 as only alleging ineffective assistance of counsel, but it also alleges trial court error for amending the charge (which is repeated in Claim 3(b)).

[2] Respondents articulate Claims 1(b) and 3(a) as alleging essentially an identical claim but then argue that Claim 1(b) is defaulted but that Claim 3(a) is not. (Doc. 28 at 3, 5 (the claim referred to by the Court as 1(b), is identified by Respondents as 1(c).)

- 3 -

petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray*, 518 U.S. at 161-62.

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**Procedural Default Analysis**

Claim 1(a)

Petitioner alleges counsel was ineffective for failing to request that the trial court remove, and failing to object to the court not disqualifying, jurors Strassman and Bracamonte for exposure to extraneous evidence. Regardless of exhaustion, the Court finds this claim should be dismissed on the merits. 28 U.S.C. § 2254(b)(2).

- 4 -

1    During the course of trial there was media coverage about an escape attempt by
2 Petitioner. Defense counsel requested that the jury be questioned about their exposure to that
3 media. Six jurors indicated they had heard or read something in the media about Petitioner.
4 Petitioner's counsel moved for a mistrial based on that exposure. (Doc. 21, Ex. Q at 65.) He
5 then requested that the court, at a minimum, excuse three of the jurors, including Bracamonte
6 and Strassman. (*Id.* at 67, 70, 78-79, 81-82.) The judge denied the mistrial and the request
7 to excuse Bracamonte and Strassman. (*Id.* at 82.)

8    It is clear from this record that trial counsel moved to have these two jurors
9 disqualified, as well as seeking a mistrial, and that request was denied. Because counsel
10 pursued the relief Petitioner now argues he should have sought, there is no factual basis for
11 this claim and it must be denied.[3]

12    Claim 2(a)/3(b)

13    Petitioner alleges it violated his Fifth and Fourteenth Amendment rights to be
14 convicted on a charge that was not included in the original indictment but included by
15 amendment during trial. In his opening brief on appeal, Petitioner alleged that it violated his
16 constitutional rights to be convicted on a charge not included in the original indictment, and
17 he cited the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. (Doc.
18 21, Ex. B at 35-37.) Therefore, he fairly presented this claim in state court. Respondents
19 argue that the appellate court found this claim waived, thus, it is procedurally defaulted.

20    The Arizona Court of Appeals stated that the purpose of an indictment is to give
21 notice of the offense but, if there is no objection, an indictment can be amended prior to
22 evidence being presented. (Doc. 21, Ex. A at 9 (citing *State v. Schwartz*, 188 Ariz. 313, 319,

---

[3] In his PCR petition and in his amended petition before this Court, Petitioner argued a more nuanced version of this claim – that counsel should have obtained copies of the news reports to demonstrate that the coverage included information on his criminal history. (Doc. 21, Ex. I at 5-11; Doc. 11 at 7.) Further, he alleged counsel should have inquired specifically with these jurors whether they had heard information about his criminal history but he failed to do so. (Doc. 21, Ex. I at 5-11; Doc. 11 at 7.) However, he did not include these allegations in his Second Amended Petition presently before the Court.

- 5 -

1  935 P.2d 891, 897 (App. 1996).) The Court then found that, because counsel consented to
2  the amendment, he waived any argument that he did not have notice. (*Id.*) The Court went
3  on to distinguish Petitioner's facts from a case upon which he relied in support of his claim.
4  (*Id.* at 9-10.) First, contrary to Respondents' argument, this amounted to a merits ruling not
5  a finding that the claim had been forfeited. The court did not state that because there was no
6  trial objection the court would not consider the claim. Instead, the court found that because
7  counsel consented the defendant had notice, which defeats the factual basis of the claim.
8  Second, under Arizona law, a failure to object at trial is not a waiver of the claim; rather, it
9  alters the standard of review such that relief can only be obtained if a defendant proves
10 fundamental error. *See State v. Martinez*, 210 Ariz. 578, 580 n.2, 115 P.3d 618, 620 n.2
11 (2005).

12 The Court finds this claim was fairly presented and properly exhausted, and it will be
13 considered on the merits.

14 Claim 2(b)

15 Petitioner alleges trial counsel was ineffective for not objecting to an amendment of
16 the indictment at trial. Review of the opening appellate brief and PCR petition reveals that
17 Petitioner did not allege ineffective assistance relating to the amendment of the indictment
18 in either of those documents. (Doc. 21, Exs. B, I.) His allegation in state court that the trial
19 court erred in allowing the amendment is insufficient to exhaust the distinct legal claim
20 regarding counsel's performance. Therefore, he failed to fairly present this claim in state
21 court.

22 If Petitioner were to return to state court now to litigate this claim, it would be found
23 waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal
24 Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P.
25 32.2(b); 32.1(d)-(h). Therefore, this claim is technically exhausted but procedurally
26 defaulted.

27
28

<u>Claim 3(c)</u>

Petitioner alleges prosecutorial misconduct based on misstatements of the law, instructing the jury on alternative charges, and amendment of the charges. Review of the opening appellate brief and PCR petition reveals that Petitioner did not allege prosecutorial misconduct in either of those documents. (Doc. 21, Exs. B, I.) Petitioner's state court allegations regarding some of the facts underlying this claim (e.g., amendment of the charges) are not sufficient to exhaust the distinct legal claim of prosecutorial misconduct. Therefore, he failed to fairly present this claim in state court.

If Petitioner were to return to state court now to litigate this claim, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, this claim is technically exhausted but procedurally defaulted.

<u>Cause and Prejudice and Miscarriage of Justice</u>

Petitioner states in his reply brief: "If a procedural default has occurred it was a prejudicial result of federal law, or the result of a miscarriage of justice. (Trial counsels failure to challenge courts illegal jury instruction.)." First, nothing in this statement operates as cause for Petitioner's failure to exhaust a claim. Federal law is not a reason for failing to fairly present a claim in state court. Further, the fact that trial counsel may not have challenged a jury instruction does not provide an explanation for failing to raise these claims unrelated to jury instructions on direct appeal or during the PCR proceeding. Second, to demonstrate a fundamental miscarriage of justice based on factual innocence, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To establish the requisite probability, the petitioner must demonstrate with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 324, 327. Petitioner has not presented new evidence nor argued that he is actually innocent.

<u>Conclusion</u>

Claim 1(a) is without factual basis and should be dismissed on the merits. Claim 2(a)/3(b) is exhausted and the Court will consider it on the merits. Because Petitioner failed to establish cause and prejudice or a fundamental miscarriage of justice to excuse any procedural defaults, Claims 2(b) and 3(c) are procedurally defaulted and subject to dismissal on that ground.

**MERITS**

**Legal Standard for Relief Under the AEDPA**

The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection

- 8 -

1  (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs
2  the sufficiency of the claims on habeas review. "Clearly established" federal law consists
3  of the holdings of the Supreme Court at the time the petitioner's state court conviction
4  became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

5  The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).
6  The Court has explained that a state court decision is "contrary to" the Supreme Court's
7  clearly established precedents if the decision applies a rule that contradicts the governing law
8  set forth in those precedents, thereby reaching a conclusion opposite to that reached by the
9  Supreme Court on a matter of law, or if it confronts a set of facts that is materially
10 indistinguishable from a decision of the Supreme Court but reaches a different result.
11 *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In
12 characterizing the claims subject to analysis under the "contrary to" prong, the Court has
13 observed that "a run-of-the-mill state-court decision applying the correct legal rule to the
14 facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to'
15 clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir.
16 2004).

17 Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court
18 may grant relief where a state court "identifies the correct governing legal rule from [the
19 Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or
20 "unreasonably extends a legal principle from [Supreme Court] precedent to a new context
21 where it should not apply or unreasonably refuses to extend that principle to a new context
22 where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's
23 application of Supreme Court precedent "unreasonable," the petitioner must show that the
24 state court's decision was not merely incorrect or erroneous, but "objectively unreasonable."
25 *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

26 Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state
27 court decision was based upon an unreasonable determination of the facts. *Miller-El v.*
28 *Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**Merits Analysis**

Claim 1(b)/3(a)

Petitioner alleges the trial court violated his Fourteenth Amendment right to a fair trial by not dismissing jurors Strassman and Bracamonte in light of their exposure to media coverage during the trial. The appellate court set forth the following factual background regarding this claim:

> On the morning of the seventh day of trial, Pedrin attempted to escape from police custody while being transported from the jail to the courthouse. That evening, there were several television news reports about the incident, and it was reported in local newspapers the next morning. The following day, juror P. told the bailiff he had read an article about Pedrin's attempted escape in the morning newspaper. The trial court then questioned P. out of the presence of other jurors. P. stated that he had learned that Pedrin had "tr[ied] to flee or something" the previous morning and that Pedrin had "been in jail before." He said he had not discussed the article with other jurors.
>
> The trial court then questioned the remaining jurors about whether they had "seen or heard anything in the paper, or on the radio, anything about [the] case." Five jurors indicated they had, and each was questioned individually about what he or she had learned. Three of the jurors stated they had heard Pedrin's name mentioned on the television the previous night but had learned nothing "other than the fact his name was mentioned on television." The other two [Strassman and Bracamonte], however, said they had learned that Pedrin had attempted to escape – one had watched a television news report about the incident and the other had been told about the incident by her husband.
>
> Defense counsel moved for a mistrial, claiming the jurors had been "unequivocally tainted by what they [had] heard." He requested in the alternative that juror P. and the two jurors who learned that Pedrin had tried to escape be dismissed from the jury. The trial court denied the mistrial but dismissed juror P., stating: "I think he read a little bit too far." The court found the other five jurors had, at most, "just heard about [the attempted escape]" and "any problem" could be remedied by instructing the jury that news coverage "is not evidence and may not be considered . . . for any purpose." Prior to closing arguments the jurors were so instructed.

- 10 -

(Doc. 21, Ex. A at 4-5.)

The appellate court found that denial of a mistrial was not an abuse of discretion because the two jurors' exposure to the extraneous evidence did not necessarily "cast an irrevocable cloud over [their] fairness and impartiality." (*Id.* at 6 (quoting *State v. Reynolds*, 11 Ariz. App. 532, 535, 466 P.2d 405, 408 (1970).) The court also found that Pedrin was not prejudiced by the court's refusal to dismiss the two jurors because trial evidence established that Pedrin fled from police during the crime of which he was being tried; thus, further evidence of a propensity for flight was cumulative. (*Id.* at 7-8.) The court noted, as to both the request for mistrial and dismissal of the two jurors, that the trial court was best suited to assess the jurors' credibility when they affirmed that they could decide the case based solely on the trial evidence. (*Id.* at 6, 8.)

The Supreme Court holds that "juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged [do not] alone presumptively deprive[] the defendant of due process." *Murphy v. Florida*, 421 U.S. 794, 799 (1975). However, he is so deprived if he does not receive a panel of impartial, indifferent jurors. *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, (1961)). A juror need not be entirely ignorant of the facts involved in the defendant's case nor is his impartiality necessarily in question because he has some preconceived notion on the guilt or innocence of the accused. *Id.* at 800. It is sufficient if a juror can set aside any opinion and render his verdict based solely on the trial evidence. *Id.*

Here, the trial judge took steps to individually question each juror that was exposed to the media about Petitioner during trial. Neither Strassman nor Bracamonte expressed any partiality and each of the jurors that rendered the verdict assured the judge they could decide the case based on the trial evidence alone. In *Murphy*, the court found it sufficient that the jurors assured the court they did not believe the defendant's past crimes were relevant to his current case. *Id.* at 800-01. This is not the type of case where a juror's assurance of impartiality should be disregarded based on the inflammatory nature of the news coverage;

- 11 -

1 rather, the information these jurors heard was factual in nature and limited to information
2 about his attempted escape. *See id.* at 802; *see also Irvin*, 366 U.S. at 728 (reversing because
3 two-thirds of jury admitted a belief in the defendant's guilt during voir dire). Finally, the
4 jurors were instructed that news coverage could not be considered in their deliberations. *See*
5 *Greer v. Miller,* 483 U.S. 756, 766 n.8 (1987) (it is presumed the jury will follow a curative
6 instruction).

The Court finds that the appellate court's denial of this claim was not an objectively unreasonable application of Supreme Court law.

Claim 2(a)/3(b)

Petitioner alleges his Fifth and Fourteenth Amendment rights were violated by conviction on a charge that was not in the original indictment but included by amendment during trial.

As described by the court of appeals, the indictment charged Petitioner with conspiracy to commit a class two felony, citing the first-degree burglary statute. (Doc. 21, Exs. A at 8, B at 25, C at 16.) After the jurors were seated, on the first day of trial, the court summarized this charge as the defendants conspired to commit a class two felony, that is armed robbery or kidnapping (each of which were alleged as separate charges in the indictment and brought to trial). (*Id.*, Ex. A at 8.) Prior to the presentation of evidence, the prosecutor moved to amend the indictment to mirror the language used by the court. (*Id.* at 9, 10.) Defense counsel consented to the amendment and the motion was granted without objection. (*Id.* at 9.) The court of appeals found that counsel's consent to the amendment waived the argument that he was deprived of notice. (*Id.*) The court emphasized that Pedrin was present for the amendment and did not object and the amendment occurred prior to any evidence being presented. (*Id.* at 10.) The court also characterized the amendment as technical or a formality, noting that amendments of that type are allowed without a defendant's consent under Arizona law. (*Id.* at 10 n.4.)

Petitioner's Fifth Amendment argument is that a person cannot be tried on a charge not indicted by a grand jury. The Supreme Court has long held that the Fifth Amendment

1 provisions requiring indictment by a grand jury are not part of the due process of law
2 incorporated as to *state* criminal prosecutions by virtue of the Fourteenth Amendment. *See*
3 *Hurtado v. People of State of Cal.*, 110 U.S. 516, 538 (1884); *Branzburg v. Hayes*, 408 U.S.
4 665, 688 n.25 (1972). Thus, this Fifth Amendment protection does not apply to Petitioner.

5  Petitioner also argues that the amendment of the charge against him violated his right
6 to due process. A defendant has a due process right to notice of the charge, by way of a
7 charging document, and a chance to be heard at trial on the issues raised by that charge. *Cole*
8 *v. Arkansas*, 333 U.S. 196, 201 (1948); *Gautt v. Lewis*, 489 F.3d 993, 1004, 1009 (9th Cir.
9 2007). The purpose of notice is to allow a defendant to prepare a defense against the
10 particular charges. *Gautt*, 489 F.3d at 1003. In *Gautt*, the Ninth Circuit noted that, as of 2007,
11 the Supreme Court had issued few opinions on the due process right to notice of the charges.
12 *Id.* at 1004 n.11.

13  The indictment informed Pedrin that he was charged with conspiracy to commit a
14 class two felony. The only change at the time of trial, prior to the presentation of evidence,
15 was to amend the class two felony from burglary to robbery or kidnapping. All of these class
16 two felonies, burglary, robbery and kidnapping, were separately indicted. Counsel made no
17 objection to the amendment. This is not surprising because he was on notice to prepare a
18 defense to conspiracy as well as the felonies to which Pedrin was allegedly conspiring.

19  The Court finds that Pedrin was given sufficient notice of the conspiracy charge to
20 prepare a defense and the amendment did not violate his right to due process. Amendment
21 occurred prior to the presentation of evidence, therefore, he was able to present a defense to
22 the amended charge. Defendant suggests that he had to personally consent to the amendment;
23 however, the Supreme Court has not so held. The court of appeals' denial of this claim was
24 not an objectively unreasonable application of clearly established Supreme Court law.

25  **CONCLUSION & RECOMMENDATION**

26  Claims 2(b) and 3(c) are procedurally defaulted and should be dismissed on that basis.
27 Claims 1(a), 1(b)/3(a), and 2(a)/3(b) do not warrant relief under the AEDPA and should be
28 dismissed on the merits. Based on the foregoing, the Magistrate Judge recommends the

District Court enter an order DISMISSING the Second Amended Petition for Writ of Habeas Corpus (Doc. 24).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. Any objections filed should be captioned with the following case number: **CV-11-150-TUC-DCB**.

DATED this 20th day of June, 2012.

D. Thomas Ferraro
United States Magistrate Judge